## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIELLA LOPEZ, DAVID FREIFELD, AND CRYSTAL PATERSON, individually, and on behalf of themselves and those similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| LINUS TECHNOLOGIES, INC. D/B/A DAVID PROTEIN, | |
| Defendant. | |

### <u>INTRODUCTION</u>

1.      Plaintiffs Daniella Lopez, David Freifeld, and Crystal Paterson ("Plaintiffs") by and through their counsel, bring this class action against Defendant Linus Technologies, Inc. d/b/a David Protein ("Defendant") to seek redress for its unlawful and deceptive practices in labeling and marketing the calories and fat content in its consumer food products.

2.      Consumers are increasingly health conscious and, as a result, many consumers seek foods low in calories and fat content, which provide a variety of known health benefits including but not limited to, weight loss, lower cholesterol and blood pressure, lower blood sugar and muscle mass maintenance, energy, and overall positive health impacts.

3.      Defendant knows consumers are mindful of the number of calories and grams of fat they consume, and thus, calories and fat content is a material driver in the purchase of products promoting low calories. Thus, Defendant prominently labels its protein bar products—including Chocolate Chip Cookie, Cinnamon Roll, Fudge Brownie, Red Velvet, Peanut Butter Chocolate

Chunk, Blueberry Pie, Pumpkin Spice, Cake Batter flavored bars (hereinafter, the "Product(s)")[1]—with the specific number of calories and fat per serving on the Products' front labels and/or in the Nutrition Fact Panel ("NFP"). Consumers, in turn, reasonably expect that each Product will actually provide the amount and percentage daily value of calories and fat per serving stated on the Product package. However, as detailed herein, Defendant misrepresents the calories and fat content on each of the Products.

4.    The Food and Drug Administration ("FDA") regulations require that the caloric content per serving is expressed to the nearest 5-calorie increment up to and including 50 calories, and 10-calorie increment above 50 calories, except that amounts less than 5 calories may be expressed as zero, on a food product's NFP.[2]

5.    FDA regulations permit that the caloric content in a food can be calculated using one of six methods of calculating caloric content of foods.[3] A "safe-harbor" provision allows the "total number of calories" measured by any of the six methods to be as much as 20% greater than the calorie content listed on a label.[4] Among the methods by which a manufacturer may determine caloric content is the Atwater factors.[5] The Atwater factors is widely used to determine caloric content in food by which the food is assigned 4 calories for 1 gram of carb, 9 calories for 1 gram

---

[1] Subject to further discovery, Plaintiff reserves the right to amend the Products at issue to include any other David Protein product that claims a specific number of calories and fat on its label that is inaccurate.

[2] 21 C.F.R. § 101.9(c)(1).

[3] Id.

[4] Id. § 101.9(g)(5)

[5] D.A.T. Southgate; A.R.C. Food Research Institute (October 1981). The Relationship Between Food composition and Available Energy. Joint FAO/WHO/UNU Expert Consultation on Energy and Protein Requirements, Rome, 5 to 17 October 1981. Available at https://www.fao.org/4/M2847E/M2847E00.htm (last accessed January 13, 2026).

of fat, and 4 calories for 1 gram of protein. Accordingly, food producers, such as Defendant, must ensure that their products actually contain the number of calories listed on their labels.

6.    The other five applicable methods of calculating caloric content set forth by the FDA[6] do not provide a safe harbor for the Products at issue. That is because all of the applicable methods described at that provision rely on an accurate accounting of nutrient and macronutrient content, including fat. As it will be presented here, the label and associated advertising materials disseminated by Defendant deceptively misstate the fat content of the Products.

7.    The FDA regulations also require that the number of grams of total fat in a serving, expressed to the nearest 0.5 (1⁄2) gram increment below 5 grams and to the nearest gram increment above 5 grams, be included on a food product's NFP.[7] The fat content in a protein bar is analyzed by appropriate methods as given in the "Official Methods of Analysis of the AOAC International," ("AOAC") or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures.[8] The official AOAC method for fat analysis is AOAC 945.44. Accordingly, food producers, such as Defendant, must ensure that their products actually contain the amount of fat listed on their labels.

8.    The FDA deems that a food product's label is misbranded if the label declarations regarding calories and fat "nutrient content of the composite is greater than 20 percent in excess of the value for that nutrient declared on the label."[9]

9.    As detailed herein, testing of the Products shows that the true number of calories in these products is way more than what is claimed. When tested using the Atwater factor, it is clear

---

[6] 21 C.F.R. 101.9(c)(i)

[7] 21 C.F.R. § 101.9(c)(2).

[8] 21 C.F.R. §§ 101.9(g)(2)

[9] 21 C.F.R. § 101.9(g)(5).

that these Products exceed the number of calories stated by around 78% to 83%. Put simply, Defendant failed to provide a statement of the correct number of calories per serving as required under federal regulations.

10.    Testing also shows that the true fat content in these products is way more than what is claimed. When the Products are tested using the AOAC 945.44 fat analysis, it is clear that these products exceed the amount of fat stated in their labels by 368% to 400%. Put simply, Defendant failed to provide a statement of the correct amount of total fat and percentage daily value of fat per serving as required under federal regulations.

11.    Consumers reasonably expect that Defendant's Products will actually display the correct number of calories and total fat per serving claimed on the Products' labels and stated in the Products' section of the NFPs. But Defendant's Products do not do so. Had Defendant included statements of the accurate number of calories and total fat as it was required to do under the law, it would have revealed that the Products contain way more calories and total fat than represented. That information is material to reasonable consumers.

12.    Defendant's unlawful and misleading calories and total fat claims caused Plaintiff and members of the Class to pay a price premium for the Products.

## PARTIES

13.    Plaintiff Daniella Lopez is an individual domiciled in Los Angeles, California.

14.    Plaintiff David Freifeld is an individual domiciled in Vernon Hills, Illinois.

15.    Crystal Paterson is an individual domiciled in New York, New York.

16.    Defendant Linus Technologies, Inc. d/b/a David Protein is a corporation existing under the laws of the State of Delaware with its principal place of business in New York, New York.

17.     Upon information and belief, Linus Technology, Inc. operates under the trade name "David" and/or "David Protein" and manufactures protein bars and other food products.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and Plaintiffs and Defendant are citizens of different states.

19.     A significant portion of the injuries, damages, and/or harm upon which this action is based occurred or arose out of the activities engaged in by Defendant within, affecting and emanating from, the State of New York. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of New York. Defendant is domiciled and engaged, and continues to engage, in substantial and continuous business practices in the State of New York.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of New York, including within this District.

21.     Plaintiffs accordingly alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### I.     Defendant Misrepresents the Calories and Total Fat in its Products

22.     Defendant manufactures, distributes, markets, advertises, and sells a variety of protein bar Products. These Products have packaging that predominately, uniformly, and consistently states the Products contain a specific number of calories and total fat. However, the Products at issue here contain a significant higher number of calories and total fat than represented on the product packaging.

23.    The representations that the Products contain an number of calories and total fat per serving were uniformly communicated to Plaintiffs and every other person who purchased the Products. Each of the David Protein Bar labels include a label representation regarding the number of calories and total fat per serving.

24.    By way of example, the same or substantially similar Product label appeared on each Product during the entirety of the Class Period:

**David Peanut Butter Chocolate Chunk Flavored Bar**







25.    As described in detail herein, Defendant's calories and fat claims, which advertise the Products as containing and providing specific amounts per amount/serving, are unlawful and deceptive in that: (1) the Products misrepresent the number of calories in the Products when tested using the appropriate Atwater factor calculating method the number of calories is actually much higher; and (2) the Products' labels misrepresent the total fat and total fat %DV, the Products when tested using the appropriate AOAC testing, contain a much higher amount of total fat content.

26.    Both independent and third-party testing by consumer groups demonstrate that the Products contain a much higher number of calories and fat content.

27.    Indeed, Plaintiffs tested the Products using an ISO/IEC 17025:2017 and LAAF accredited laboratory recognized by the FDA, Anresco Laboratories.  The laboratory performed calories and fat content testing in the Products using the Atwood factors and AOAC 945.44 methods, and the analysis found that Defendant drastically understates the total number of calories and total fat in the Products. The results of Plaintiffs' testing are found below:

| Name of Product | Calories on Label | Calories Found in Testing (per serving) | Total Fat on Label | Total Fat Found in Testing |
|---|---|---|---|---|
| David Blueberry Pie Flavored Bar | 150 | 275 | 2g | 13.52g |

| | | | | |
|---|---|---|---|---|
| David Red Velvet | 150 | 271 | 2.5g | 12.31g |
| David Pumpkin Spice | 150 | 273 | 2g | 13.09 |
| David Cinnamon Roll | 150 | 273.03 | 2g | 12.99 |
| David Chocolate Chip Cookie Dough Flavored Bar | 150 | 268 | 2g | 12.25 |
| David Fudge Brownie | 150 | 269.86 | 2g | 12.81 |
| David Peanut Butter Chocolate Chunk | 150 | 263.88 | 2.5 | 11.76 |
| David Cake Batter Flavored Bar | 150 | 271.45 | 2g | 12.67 |

28.    Here, each of the Products contained significantly more calories and total fat content when measured/tested. This is a significant and material misrepresentation.

29.     Defendant's prominent calories and NFT label claims deceive and mislead reasonable consumers into believing a serving of the Products will provide the number of calories and grams of fat represented on the label when that is not true. Had Defendant complied with the law, the statement of the total and correct number of calories and fat would have revealed to consumers that the Products provide significantly more calories and total fat than claimed. Defendant has been able to charge a price premium for the product as a result of these misrepresentations and omissions.

30.     Defendant's failure to comply with § 101.9(c)(1-2) also makes the label claims unlawful under §§ 101.13(n) and (b). The unlawful calories and fat content claims induced consumers to purchase the Products at a premium price. Had Defendant complied with FDCA and related FDA regulations, accurately reporting the fat content contained therein as a %DV, reasonable consumers would not have purchased them or would have paid less for the Products.

31.     Additionally, these representations render the Products adulterated under the FDCA, and therefore they should not (and could not) be legally sold.  For the same reason that these representations violate the FDCA, they also violate state law.

## II.     Federal Regulations Governing Food Labeling

32.     Federal laws regulate the content of labels on packaged food. The requirements of the FDCA and its labeling regulations are applicable nationwide to all sales of packaged food products. Additionally, none of the state laws sought to be enforced here impose different requirements on the labeling of packaged food for sale in the United States.

33.     The FDCA provides that a food is misbranded if "its labeling is false or misleading in any particular."[10] This requirement parallels state consumer protection laws, which prohibit false

---

[10] 21 U.S.C. § 343(a)

and misleading advertising. But, the FDCA's prohibition is also adopted by states in their own parallel food labeling laws, such as the New York State Agriculture and Markets Law § 201 ("Food shall be deemed to be misbranded: 1. if its labeling is false or misleading in any particular…."), California Sherman Food, Drug, and Cosmetic Law. Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.") and the Illinois Food, Drug and Cosmetic Act, 410 ILCS 620/11 ("A food is misbranded [i]f its labeling is false or misleading in any particular").

34.    Through the FDCA, the FDA regulates the nutritional labeling of food, including the requirement to provide information about the number of calories and fat content in food products.[11] More specifically, the nutrition facts label regarding calories must include the caloric content, "[a] statement of the caloric content per serving, expressed to the nearest 5-calorie increment up to and including 50 calories, and 10-calorie increment above 50 calories, except that amounts less than 5 calories may be expressed as zero."[12] Caloric content may be calculated using the Atwater factors.

35.    The other five applicable methods of calculating caloric content set forth at 21 C.F.R. 101.9(c)(i) do not provide a safe harbor for the Products at issue here. That is because all of the applicable methods described at that provision rely on an accurate accounting of nutrient and macronutrient content, including total fat. Here, as set forth above, the label and associated advertising materials disseminated by Defendant deceptively misstate the fat content of the Products.

36.    Likewise, the FDCA requires food manufacturers to provide information about the

---

[11] *See* 21 C.F.R. § 101.9(c)(1-2).

[12] *See id.*

amount of fat, total or "Total fat", in "[a] statement of the number of grams of total fat in a serving." Fat content may be calculated using the appropriate AOAC method. The official AOAC method for fat analysis is AOAC 945.44.

37.    The FDA specifically provides that food manufacturers must disclose the number of calories in their food products. According to FDA regulations, "[a] statement of the caloric content per serving, expressed to the nearest 5-calorie increment up to and including 50 calories, and 10-calorie increment above 50 calories, except that amounts less than 5 calories may be expressed as zero."[13]

38.    FDA regulations permit that the caloric content in a food can be calculated using one of six methods of calculating caloric content of foods. A "safe-harbor" provision allows the "total number of calories" measured by any of the six methods to be as much as 20% greater than the calorie content listed on a label. Among the methods by which a manufacturer may determine caloric content is using the Atwater factors. The Atwater factors method is widely used to determine caloric content in food: the food is assigned 4 calories for 1 gram of carb, 9 calories for 1 gram of fat and 4 calories for 1 gram of protein. Accordingly, food producers, such as Defendant, must ensure that their products actually contain the number of calories listed on their labels.

39.    The other five applicable methods of calculating caloric content set forth by the FDA do not provide a safe harbor for the Products. That is because all of the applicable methods described at that provision rely on an accurate accounting of nutrient and macronutrient content, including fat. As it will be presented here, the label and associated advertising materials disseminated by Defendant deceptively misstate the fat content of the Products.

40.    The FDA regulations also require that the number of grams of total fat in a serving,

---

[13] 21 C.F.R. § 101.9(c)(1).

expressed to the nearest 0.5 (1⁄2) gram increment below 5 grams and to the nearest gram increment above 5 grams, be included on a food product's NFP.  The fat content in a protein bar is analyzed by appropriate methods as given in the "Official Methods of Analysis of the AOAC International," ("AOAC") or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures. The official AOAC method for fat analysis is AOAC 945.44. Accordingly, food producers, such as Defendant, must ensure that their products actually contain the amount of fat listed on their labels.

41.    Similarly, 21 C.F.R. § 101.13(i)(3), prohibits manufacturers from making a claim on a product's package about the "amount or percentage of a nutrient," such as fat, if the statement is "false or misleading in any respect." If it is, then "it may not be made on the label."[14] This is true even if the same amount appears in the nutrition facts panel.[15]

42.    Under the FDCA, the term "false" has its usual meaning of untruthful, while the term "misleading" is a term of art that covers labels that are technically true but are likely to deceive consumers.

## IV.    Defendant's Marketing and Labeling of the Products Independently Violates Federal and State Law

43.    Defendant's Products are unlawful, misbranded, and violate state and federal law. Defendant both misrepresents the amount of total fat in its Products, as well as the %DV, as required by 21 C.F.R. § 101.9(c)(1). Defendant's failure to comply with this requirement renders the label fat claims on each Product unlawful *per se* and the Products misbranded pursuant to §§ 101.13(n) and (b), as well as under § 101.9(c)(1), and parallel state law.

44.    As noted herein, the total amount of fat in food products is material to consumers.

---

[14] 21 C.F.R. § 101.13(b).

[15] 21 C.F.R. § 101.13(c).

Accordingly, misrepresenting the total amount of fat in the Products by over 368-400 percent is deceptive and misleading, rendering Defendant's Product labels literally false. Indeed, Defendant represents the Products contain between 2 grams of fat, but testing confirms that they contain between 11-13.5 grams of fat.

45.     Defendant also fails to provide an accurate %DV of fat on the Products' labels, misrepresenting the amount therein. Consumers have a "limited knowledge and understanding of the amount of [fat] that [is] recommended for daily consumption,"[16] let alone an understanding of the science behind how fat is absorbed in the body. The FDA thus requires a statement of the correct amount of fat per serving in the NFP precisely to ensure that consumers are not misled by incorrect information.[17]

46.     Indeed, Defendant represents its Products have 2 grams of fat, and states that the Product provides 3%DV of fat, when testing shows that it should be between 11-13.5 grams making the %DV to be 16-20%DV. Defendant's failure to provide a statement of the correct amount of fat per serving for the Products renders those labels misleading.

47.     Defendant violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. § 101.9(c)(1-2), which were implemented to prevent the false and misleading conduct described herein. These federal food regulations are also incorporated into several states' food laws, including in New York, California and Illinois.[18] These

---

[16] 56 Fed. Reg. 60421

[17] 58 Fed. Reg. 2079 at 2101–02.

[18] *See* N.Y. Agric. & Mkts. Law § 214-b. (McKinney) ("[t]his article and the regulations promulgated thereunder shall be so interpreted and construed, however, as to effectuate its general purpose to enact state legislation uniform with the federal act approved June twenty-fifth, nineteen hundred thirty-eight, and all acts amendatory thereof and supplemental thereto."); Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."); 410 ILCS 620/11 (mirroring 21 U.S.C. §

13

are not just technical violations of food labeling law, but serious misrepresentations that harm both consumers and competition.

48.    A reasonable consumer would expect the Products to contain what Defendant claims on the Product labels and that the labels would not be contrary to the policies or regulations of FDA and advertised in violation of New York, California, and Illinois law.

49.    For example, reasonable consumers would expect that when Defendant labels its Products with "150 calories," "75% CFP = Calories from Protein/Total Calories" and "Total Fat 2g, 3%DV"[19] as it claims on the Products label, for example, the Product would provide 150 calories and 2 grams of fat per serving. However, testing shows that it actually contains between 268-275 calories with between 11-13.5 grams of fat per serving. Accordingly, Defendant's Products provide more than 78-80% number of calories and more than 368-400% fat content than advertised and labeled.

50.    Additionally, the Product's label represents that the Product provides 3% of a person's daily value of fat, when accurate testing shows that it is actually more than 16% of the daily recommended fat consumption. It is plain that Defendant did not use the correct amount of fat content per serving, as required, but calculated the calories based on the 2 grams of fat it falsely represents is in its Product. Because Defendant did not provide an accurate statement of the correct amount of fat per serving and because it expressed the incorrect %DV of fat content, consumers have no idea that the Products contain a much higher number of calories and fat content.

51.    As shown in the table above at paragraph 27, similar misrepresentations also appear on Defendant's line of Products. All of these Products have a much higher number of calories and

---

343(a)).

[19] The Peanut Butter Chocolate Chunk and Red Velvet flavors state 2.5 grams of total fat at the same 3 %DV as all the other flavors.

fat content in grams, and as %DV of fat, when compared to what is reported on the label.

52.    Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's food labeling claims, especially at the point of sale. They would not know the true number of calories and fat content the Products provide merely by looking elsewhere on the Products. Its discovery requires investigation well beyond the grocery store aisle and knowledge of food chemistry beyond that of the average consumer.

53.    An average consumer does not have the specialized knowledge necessary to ascertain that a serving of the Products does not provide the number of grams of fat that is represented on the labels. The average reasonable consumer has no reason to suspect that Defendant's representations on the Products' labels are misleading. Therefore, consumers have no reason to investigate whether the Products actually do contain the number of calories and fat content per serving that the Products' labels claim. Nor do consumers have a way to prevent their injury. Instead, consumers reasonably rely on Defendant's representations regarding the nutritional contents of the Products.

54.    Additionally, Defendant's actions harm competition. In making false, misleading, and deceptive representations, Defendant distinguishes the Products from its competitors' products. By using this branding and marketing strategy, Defendant states that the Products are superior to, better than, and more nutritious than other products that do not make such overstated calories and fat content claims, correctly representing the total number of calories and fat contained in the Products therein do not mislead consumers about the number of calories and fat their products actually provide.

55.    Defendant intends and knows that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and

marketing drive product sales, particularly if placed prominently on the product packaging, as Defendant does with the claims on the Products' labels regarding specific amounts of calories and fat content per serving.

56.     Defendant continues to market its Products with the demonstrably false calories and fat content claims. Accordingly, consumers continue to be harmed by Defendant's fraudulent business practices. Because consumers are unable to confirm the accuracy of the nutritional labeling on Defendant's Products before purchasing them, they are unable to determine if Defendant's fraudulent business was correct, or if Defendant still misrepresents its Products' caloric and fat contents.

57.     Defendant intended for Plaintiffs and the Class Members to be deceived or misled. Defendant's deceptive and misleading practices proximately caused harm to the Plaintiffs and the Class.

58.     Because consumers pay a premium for products that provide less calories and fat content by labeling the Products as containing only 150 calories and 2 grams and 3%DV of fat per serving than they actually provide, Defendant is able to both increase its sales and retain more profits.

**Consumer Demand for low calorie and fat consumption**

59.     Not only are Defendant's misrepresentations misleading, they are material.  As Defendant is well aware, many American consumers are health conscious and routinely rely upon nutrition information when selecting and purchasing food items. As noted by former FDA Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help

16

them build a healthy diet."[20]

60.    Overconsumption of calories and fat is one of the primary risk factors for being overweight or obese. About half of consumer's annual food dollars and a third of total calories and fat come from food retailers outside the home. Research indicates that many people do not know, or underestimate, the calorie and nutrient content of these foods. Overconsumption of calories and its associated health risks are often severe and life threatening, including obesity, hypertension, diabetes, coronary heart disease, and certain kinds of cancer.

61.    Almost all diets utilized by consumers measure (and try to limit) both calories and fat consumed. It is well known that restriction of calories and fat can lead to weight loss. Additionally, most consumers, even those not on a diet, well use that number of calories and fat in a product as an indication of the healthiness of the food product.  For example, a study by the U.S. Department of Agriculture shows that nearly 80 percent of U.S. adults used Nutrition Facts panel on food labels in buying decisions.[21]

62.    This is not surprising.  The health benefits of a low-calorie and low-fat diet are well studied and wide ranging. Scientific studies confirm that it assists in weight loss, reduces blood pressure, reduces cholesterol, and controls risk factors for cardiovascular diseases.  Accordingly, consumers seek out foods lower in both calories and fat.  The number of calories and fat are material to a reasonable consumer, and directly affect the perceived value of the Product.

63.    This is likely why Defendant highlights the number of calories in its Products. Space on a label is limited, and Defendant would not advertise the number of calories in its Products if its caloric content was not material to consumers. In other words, when it comes to

---

[20] Transcript for FDA's Media Briefing on Front-of-Pack Labeling, October 20, 2009.

[21] https://www.ers.usda.gov/data-products/charts-of-note/chart-detail?chartId=106957

precious label real estate, Defendant knows that words matter to consumers, and Defendant specifically chose to label the Products with the challenged caloric content to attract consumers' attention and impact their purchasing decisions.

64.     Because reasonable consumers value their calories and fat content intake, the proper amounts in products labels and its NFP are material to consumers.

65.     Given the importance of calories and fat content to consumers, it is understandable that the FDA has specific regulations to ensure that food manufacturers accurately represent both the total amount and %DV in their food products. These regulations inform Plaintiffs' misrepresentation claims.

## PLAINTIFFS' EXPERIENCES

### Plaintiff Crystal Paterson

66.     Crystal Paterson purchased David's bars multiple times from retailers such as Amazon.com and had them shipped to her home in New York, NY.  Plaintiff's most recent purchase was for a box of Peanut Butter Chocolate Chunk bars from Amazon.com in January 2026 for an approximate retail price of $39.00.

67.     Crystal Paterson made each of her purchases after reading and relying on Defendant's Product labels that promised the Products provided a specific number of calories and total fat per serving. She believed the truth of each representation, *i.e.*, that the Products would actually provide the specific number of calories and total fat claimed on the labels. Plaintiff believed that the calories vs protein balance was perfect for her diet and daily food consumption. Had Defendant complied with the law and stated the correct number of calories and total fat claims on the Products' labels, she would not have been drawn to the Products and would not have purchased them. At a minimum, Crystal Paterson would have paid less for each Product.

68.     Moreover, had Defendant followed FDA regulations and adequately disclosed the correct number of calories and total fat per serving for each Product expressed, Crystal Paterson would not have purchased the Products or would have, at minimum, paid less for them.

69.     Crystal Paterson checks the NFP before purchasing products for the first time, and she uses that information as a basis of comparison between similar products. She looked at and read the NFP on the Products before purchasing them for the first time. She especially looks at the calorie and total fat content on the NFP.

70.     Crystal Paterson continues to desire to purchase products that contain low amounts of calories and total fat, including those marketed and sold by Defendant. Crystal Paterson would like to purchase products that provide the calories and total fat content per serving correctly as advertised. If the Products or the labels were reformulated to provide non-misleading information, Plaintiff Lopez would likely purchase them again in the future.

71.     Crystal Paterson and members of the Class were economically damaged by their purchases of the Products because the advertising for the Products was, and remains, untrue and/or misleading under state law and the Products are misbranded; therefore, the Products are worth less than what Crystal Paterson and members of the Class paid for them and/or Crystal Paterson and members of the Class did not receive what they reasonably intended to receive.

**Plaintiff Daniella Lopez**

72.     Plaintiff Daniella Lopez purchased David Red Velvet, Fudge Brownie, Blueberry Pie, Chocolate Chip Cookie flavored bars multiple times from different retail stores in the State of California throughout 2025 with her last purchase being January 5, 2026. Plaintiff Lopez purchased Defendant's Products on more than 20 occasions for approximately $3.99 per unit.

73.     Plaintiff Lopez made each of her purchases after reading and relying on Defendant's

Product labels that promised the Products provided a specific number of calories and total fat per serving. She believed the truth of each representation, *i.e.*, that the Products would actually provide the specific number of calories and total fat claimed on the labels. Plaintiff believed that the calories vs protein balance was perfect for her diet and daily food consumption. Had Defendant complied with the law and stated the correct number of calories and total fat claims on the Products' labels, she would not have been drawn to the Products and would not have purchased them. At a minimum, Plaintiff Lopez would have paid less for each Product.

74.     Moreover, had Defendant followed FDA regulations and adequately disclosed the correct number of calories and total fat per serving for each Product expressed, Plaintiff Lopez would not have purchased the Products or would have, at minimum, paid less for them.

75.     Plaintiff Lopez checks the NFP before purchasing products for the first time, and she uses that information as a basis of comparison between similar products. She looked at and read the NFP on the Products before purchasing them for the first time. She especially looks at the calorie and total fat content on the NFP.

76.     Plaintiff Lopez continues to desire to purchase products that contain low amounts of calories and total fat, including those marketed and sold by Defendant. Plaintiff Lopez would like to purchase products that provide the calories and total fat content per serving correctly as advertised. If the Products or the labels were reformulated to provide non-misleading information, Plaintiff Lopez would likely purchase them again in the future.

77.     Plaintiff Lopez and members of the Class were economically damaged by their purchases of the Products because the advertising for the Products was, and remains, untrue and/or misleading under state law and the Products are misbranded; therefore, the Products are worth less than what Plaintiff Lopez and members of the Class paid for them and/or Plaintiff Lopez and

members of the Class did not receive what they reasonably intended to receive.

**Plaintiff David Freifeld**

78.    Plaintiff David Freifeld purchased Cinnamon Roll and Chocolate Chip Cookie flavored bars from a Target retail store in the State of Illinois on January 5, 2026. Plaintiff Freifeld purchased 2 boxes of Defendant's Products for approximately $8.99 per unit.

79.    Plaintiff Freifeld made each of his purchases after reading and relying on Defendant's Product labels that promised the Products provided a specific number of calories and total fat per serving. He believed the truth of each representation, i.e., that the Products would actually provide the specific number of calories and total fat claimed on the labels. Plaintiff Freifeld is on a strict diet and watching his MACROS intake, and he believed that the number of calories and total fat per serving in the Products were correct. Had Defendant complied with the law and stated the correct calories and total fat claims on the Products' labels, he would not have been drawn to the Products and would not have purchased them. At a minimum, Plaintiff Freifeld would have paid less for each Product.

80.    Moreover, had Defendant followed FDA regulations and adequately disclosed the correct number of calories and total fat per serving for each Product expressed, Plaintiff Freifeld would not have purchased the Products or would have, at minimum, paid less for them.

81.    Plaintiff Freifeld checks the NFP before purchasing products for the first time, and he uses that information as a basis of comparison between similar products. He looked at and read the NFP on the Products before purchasing them for the first time. He especially looks at the calories and total fat content on the NFP.

82.    Plaintiff Freifeld continues to desire to purchase products that contain low amounts of calories and total fat, including those marketed and sold by Defendant. Plaintiff Freifeld would

like to purchase products that provide the calories and total fat content per serving correctly as advertised. If the Products or the labels were reformulated to provide non-misleading information, Plaintiff Freifeld would likely purchase them again in the future.

83.     Plaintiff Freifeld and members of the Class were economically damaged by their purchases of the Products because the advertising for the Products was, and remains, untrue and/or misleading under state law and the Products are misbranded; therefore, the Products are worth less than what Plaintiff Freifeld and members of the Class paid for them and/or Plaintiff Freifeld and members of the Class did not receive what they reasonably intended to receive.

## FED. R. CIV. P. 9(b) ALLEGATIONS

84.     Although Defendant is in the best position to know what content it placed on its Product packaging, on its website(s), and on the websites of retailers of the Products during the relevant timeframe, and the knowledge it had regarding the caloric and fat content in the Products, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

85.     **WHO**: Defendant made material misrepresentations of fact through its Products' packaging regarding the number of calories and fat content in its Products.

86.     **WHAT**: Defendant's conduct was, and continues to be, fraudulent because it misrepresented the number of calories and fat content in the Products, a fact that Defendant knew, or should have known, to be false, but nonetheless marketed, and continues to market, the Products as containing a specific number of calories and fat content without disclosing or adjusting the Products' correct content in the NFP. Thus, Defendant's conduct deceived Plaintiffs and Class Members into believing that the Products contained less calories and fat content than the amount represented on the Products' labels. Defendant knew, or should have known, this information is

22

material to reasonable consumers—including Plaintiffs and Class Members—in making their purchasing decisions, yet it continued to pervasively market and label its Products as containing less calories and fat content than the Products actually contained.

87.    **WHEN**: Defendant made material misrepresentations during the putative class periods and at the time Plaintiffs and Class Members purchased the Products, prior to and at the time Plaintiffs and Class Members made claims after realizing the Products did not contain the represented number of calories and fat content, and continuously throughout the applicable class periods.

88.    **WHERE**: Defendant's marketing message was uniform and pervasive, carried through material misrepresentations on the Products' labeling and packaging, its website(s) and the websites of retailers of the Products.

89.    **HOW**: Defendant made material misrepresentations of material facts regarding the Products, including, but not limited to, the number of calories and fat content in the Products.

90.    **WHY**: Defendant made the material misrepresentations detailed herein for the express purpose of inducing Plaintiffs, Class Members, and all reasonable consumers to purchase and/or pay a premium price for the Products, the effect of which was Defendant profited by selling the Products to many thousands of consumers.

91.    **INJURY**: Plaintiffs and Class Members purchased, paid a premium, or otherwise paid more for the Products when they otherwise would not have absent Defendant's misrepresentations.

## <u>CLASS ALLEGATIONS</u>

92.    Plaintiffs Daniella Lopez, David Freifeld, and Crystal Paterson bring this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and 23(b)(3), on behalf of themselves and the members of the following classes:[22]

(a) **Nationwide Class**: During the fullest period allowed by law, all person who purchased Defendant's Products for personal use and not resale within the United States; and

(b) **California Class**: During the fullest period allowed by law, all persons who purchased Defendant's Products for personal use and not resale within the State of California.

(c) **Illinois Class**: During the fullest period allowed by law, all persons who purchased Defendant's Products for personal use and not resale within the State of Illinois.

(d) **New York Class**: During the fullest period allowed by law, all persons who purchased Defendant's Products for personal use and not resale within the State of New York.

93.     Excluded from these class definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definition, as necessary.

94.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

95.     **Numerosity:** Plaintiffs do not know the exact size of the Class but estimates that it

---

[22] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class and New York Class.

is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of its claims in a class action rather than in individual actions will benefit the parties and the courts.

96.    **Common Questions Predominate:** This action involves common questions of law and fact to the potential Class because each Class Member's claim derives from the deceptive, unlawful, and/or unfair statements and omissions that led consumers to believe that the Products contained the number of calories and fat content represented on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Classes are:

a.    Whether the marketing, advertising, packaging, labeling and other promotional materials for the Products are misleading;

b.    Whether Defendant's actions violate the consumer protection laws invoked herein;

c.    Whether labeling the Products with a number of calories and fat content claims causes the Products to command a price premium in the market;

d.    Whether Defendant's failure to provide a statement of the correct number of calories and fat content per serving in the Products was likely to deceive reasonable consumers;

e.    Whether Defendant engaged in the challenged behavior knowingly, recklessly or negligently;

f.    The profits and revenues Defendant earned as a result of the conduct;

g.    Whether Class Members are entitled to restitution, injunctive, and other equitable relief and, if so, what is the nature (and amount) of such relief; and

h. Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

97.    **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

98.    **Adequacy of Representation:** Plaintiffs will fairly and adequately protect the interests of all Class Members because it is in Plaintiffs' best interests to prosecute the claims alleged herein to obtain full compensation due to Plaintiffs for the unfair and illegal conduct of which Plaintiffs complain. Plaintiffs also have no interests that conflict with, or are antagonistic to, the interests of the Class. Plaintiffs retained highly competent and experienced class action attorneys to represent Plaintiffs and the interests of the Class. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all members of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to litigate this class action adequately and vigorously. Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

99.    **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein and Class Members will remain at an unreasonable and serious risk of repeated harm. Defendant acted, or refused to act, on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory

26

relief is appropriate with respect to the Class as a whole.

100.    **Superiority:** There is no plain, speedy or adequate remedy other than by maintenance of this class action. Individual actions by members of the Class seeking individual remedies will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

101.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

102.    Plaintiffs do not plead, and hereby disclaim, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiffs rely on the FDCA and FDA regulations only to the extent such laws and regulations are separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action:

## COUNT I
### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW
#### NY General Business Law §§ 349, *et seq.*
*(On behalf of Plaintiff Crystal Paterson, individually and on behalf of the New York Subclass)*

103.    Plaintiff Crystal Paterson, individually, and on behalf of the New York Class, re-

alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

104.    The New York General Business Law ("GBL") § 349, prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." GBL § 349(a).

105.    The practices alleged herein—namely, deceiving customers into believing that the Products contain the number of calories and fat content listed on the Product's label—are unfair, deceptive, and misleading in violation of GBL § 349.

106.     The foregoing deceptive acts and practices were directed at Plaintiff and other members of the Class.

107.    Defendant's misrepresentations, including its prominent labeling on the Products regarding the number of calories and amount of fat content the Products contain, are material to a reasonable consumer. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions.

108.    Plaintiff and members of the Class were injured as a direct and proximate result of Defendant's unlawful acts as they would have paid less for Defendant's Products but for Defendant's material misrepresentations regarding the number of calories and amount of fat content in the Product, as described in this Complaint.

109.    As a result of Defendant's unlawful actions, Plaintiff and members of the Class seek to enjoin Defendant's deceptive and unlawful acts and practices described herein; to recover the greater of their actual damages or fifty dollars ($50.00) per violation; and to recover treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## COUNT II
### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW
### NY General Business Law §§ 350, *et seq.*
### *(On behalf of Plaintiff Crystal Paterson, individually, and on behalf of the New York Subclass)*

110.    Plaintiff Crystal Paterson, individually, and on behalf of the New York Class, re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

111.    GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

112.    In turn, GBL § 350-a defines false advertising as:

advertising, including labeling, of a commodity...if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity...to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

113.    Defendant's representations regarding the number of calories and the amount of fat content in the Products listed on the Product's label, are untrue and materially misleading and deceive consumers into believing the Products contain a set number of calories and amount of fat content is substantially lower than the Products actually possess, as detailed herein.

114.    Defendant's misrepresentations regarding the number of calories and amount of fat content in the Products are material to a reasonable consumer. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchase decisions.

115.    Plaintiff and the Class Members were induced to purchase the Products by Defendant's misrepresentations on the Product's labels.

116.    Plaintiff and members of the Class were injured as a direct and proximate result of Defendant's unlawful acts as they would have paid less for the Products but for Defendant's

material misrepresentations regarding the number of calories and amount of fat content, as described in this Complaint.

117.    As a result of Defendant's unlawful actions, Plaintiff and members of the Class seek to enjoin Defendant's misleading and unlawful acts and practices described herein; to recover the greater of their actual damages or five hundred dollars ($500.00) per violation; and to recover treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
*(On behalf of the Plaintiffs, individually, and All Class Members)*

118.     Plaintiffs, individually, and on behalf of the Class, re-allege and incorporate by reference all previous paragraphs as though fully set forth herein.

119.    Defendant marketed, sold and/or distributed the Products, and Plaintiffs and the Class Members purchased the Products.

120.    Defendant provided Plaintiffs and Class Members with written express warranties and representations by representing the number of calories and amount of fat content on the Products' labels.

121.    Defendant made these express warranties regarding the Products' quality and ingredients in writing through the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Products.

122.    Defendant's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Products in deciding whether to purchase the Products.

123.    Defendant breached these warranties by providing Products that contain a substantially higher number of calories and amount of fat content and %DV than warranted. Defendant was on notice of this breach as it was aware of the inaccurate number of calories, amount of fat content, and %DV in the Products.

124.    Within a reasonable time after knowing of Defendant's breach, Plaintiffs, on behalf of themselves and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.  More specifically, on or about January 14, 2026, Plaintiffs -- by way of counsel -- sent a letter via overnight mail to Defendant along with a Draft Complaint (which included a breach of express warranty cause of action and which was materially and substantively similar to the Complaint that was ultimately filed).  The letter indicated, among other things, that Defendant was engaging in deceptive acts and practices by falsely labeling the number of calories and fat in the Products.  The letter also indicated that the Draft Complaint or a version thereof would be filed if Defendant did not cure its breach within 7 days.

125.    This breach resulted in damages to Plaintiffs and the other Class Members who bought the Products, and defendant thereby breached the following state warranty law:

    a.    Code of Ala. § 7-2-313;

    b.    Alaska Stat. § 45.02.313;

    c.    A.R.S. § 47-2313;

    d.    A.C.A. § 4-2-313;

    e.    Cal. Comm. Code § 2313;

    f.    Colo. Rev. Stat. § 4-2-313;

    g.    Conn. Gen. Stat. § 42a-2-313;

h.        6 Del. C. § 2-313;

i.        D.C. Code § 28:2-313;

j.        Fla. Stat. § 672.313;

k.        O.C.G.A. § 11-2-313;

l.        H.R.S. § 490:2-313;

m.        Idaho Code § 28-2-313;

n.        810 I.L.C.S. 5/2-313;

o.        Ind. Code § 26-1-2-313;

p.        Iowa Code § 554.2313;

q.        K.S.A. § 84-2-313;

r.        K.R.S. § 355.2-313;

s.        11 M.R.S. § 2-313

t.        Md. Commercial Law Code Ann. § 2-313;

u.        106 Mass. Gen. Laws Ann. § 2-313;

v.        M.C.L.S. § 440.2313;

w.        Minn. Stat. § 336.2-313;

x.        Miss. Code Ann. § 75-2-313;

y.        R.S. Mo. § 400.2-313;

z.        Mont. Code Anno. § 30-2-313;

aa.        Neb. Rev. Stat. § 2-313;

bb.        Nev. Rev. Stat. Ann. § 104.2313;

cc.        R.S.A. 382-A:2-313;

dd.        N.J. Stat. Ann. § 12A:2-313;

| ee. | N.M. Stat. Ann. § 55-2-313; |
|-----|------------------------------|
| ff. | N.Y. U.C.C. Law § 2-313; |
| gg. | N.C. Gen. Stat. § 25-2-313; |
| hh. | N.D. Cent. Code § 41-02-30; |
| ii. | Il. O.R.C. Ann. § 1302.26; |
| jj. | 12A Okl. St. § 2-313; |
| kk. | Or. Rev. Stat. § 72-3130; |
| ll. | 13 Pa. Rev. Stat. § 72-3130; |
| mm. | R.I. Gen. Laws § 6A-2-313; |
| nn. | S.C. Code Ann. § 36-2-313; |
| oo. | S.D. Codified Laws, § 57A-2-313; |
| pp. | Tenn. Code Ann. § 47-2-313 |
| qq. | Tex. Bus. & Com. Code § 2.313; |
| rr. | Utah Code Ann. § 70A-2-313; |
| ss. | 9A V.S.A. § 2-313; |
| tt. | Va. Code Ann. § 59.1-504.2; |
| uu. | Wash. Rev. Code Ann. § 6A.2-313; |
| vv. | W. Va. Code § 46-2-313; |
| ww. | Wis. Stat. § 402.313; and |
| xx. | Wyo. Stat. § 34.1-2-313 |

126.    As a proximate result of Defendant's breach of warranties, Plaintiffs and the other Class Members suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendant

promised in its Product promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on Products that had less value than warranted or Products that they would not have purchased and used had they known the true facts about them. In addition, Plaintiffs and Class Members paid a premium for Products that did not conform to the Defendant's warranties.

**COUNT IV**
**VIOLATIONS OF THE CALIFORNIA**
**UNFAIR COMPETITION LAW ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
***(On Behalf of Plaintiff Lopez, individually, and on behalf of the California Subclass)***

127.    Plaintiff Lopez, individually, and on behalf of the California Class, re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

128.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

129.    Plaintiff Lopez and California Class Members who purchased Defendant's Products suffered an injury by virtue of buying Products in which Defendant omitted the Products' true quality. Had Plaintiff Lopez and California Class Members known that Defendant omitted material information regarding the Products, they would not have purchased the Products.

130.    Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in this Complaint.

131.    There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise its Products.

132.    Plaintiff Lopez and California Class Members who purchased Defendant's Products had no way of reasonably knowing that the Products were deceptively packaged, marketed, advertised, and labeled, containing substantially more calories and fat content than claimed. Thus, Plaintiff Lopez and California Class Members could not have reasonably avoided the harm they

suffered.

133.    Specifically, Defendant marketed, labeled, and represented the Products with the representations described herein, when in fact the Products contain substantially more calories and fat content than advertised.

134.    The gravity of the harm suffered by Plaintiff Lopez and California Class Members who purchased Defendant's Products outweighs any legitimate justification, motive or reason for packaging, marketing, advertising, and labeling the Products in a deceptive and misleading manner. Accordingly, Defendant's actions are immoral, unethical, unscrupulous, and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiff Lopez and California Class Members.

135.    The above acts of Defendant in disseminating said misleading and deceptive statements to consumers throughout the state of California, including to Plaintiff Lopez and California Class Members, were and are likely to deceive reasonable consumers by obfuscating the true nature of Defendant's Products and, thus, were violations of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

136.    Defendant violated the UCL's proscription against engaging in unlawful business practices as a result of its violations of California's False Advertising Law, as alleged below, in addition to breaches of warranty and violations of common law.

137.    Defendant also violated the UCL's proscription against engaging in unfair business practices. Defendant's acts, omissions, and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any

alleged benefits attributable to such conduct.

138.    Defendant further violated the UCL's proscription against engaging in fraudulent business practices. Defendant's claims, nondisclosures, and misleading statements with respect to the Products, as more fully set forth herein, were false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

139.    Plaintiff Lopez and the other California Class Members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products.

140.    As a result of Defendant's above unlawful, unfair, and fraudulent acts and practices, Plaintiff Lopez, on behalf of herself and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendant from continuing these wrongful practices.

141.    Additionally, Plaintiff Lopez seeks restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff Lopez and other California Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would

**COUNT V**
**VIOLATION OF THE CALIFORNIA**
**FALSE ADVERTISING LAW ("FAL")**
**California Business and Professions Code §§ 17500, et seq.**
***(Om Behalf of Plaintiff Lopez, individually, and on behalf of the California Subclass)***

142.    Plaintiff Lopez, individually, and on behalf of the California Class, re-alleges and

incorporates by reference all previous paragraphs as though fully set forth herein.

143.    The conduct described herein took place within the state of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

144.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

145.    Defendant violated the FAL by claiming its Products contained a certain number of calories and fat content when they in fact contained a substantially higher number of calories and fat content.

146.    At the time of its misrepresentations, Defendant was either aware the Products contained number of calories and fat content than advertised, which no reasonable consumer would expect given the labeling to the contrary, or was aware that it lacked the information and/or knowledge required to make an accurate number of calories and fat content representation. Defendant concealed, omitted, and failed to disclose this information to Plaintiff Lopez and California Class Members.

147.    Defendant's descriptions of the Products were false, misleading, a material omission, and likely to deceive Plaintiff Lopez and other reasonable consumers.

148.    Defendant's conduct therefore constitutes deceptive or misleading advertising.

149.    Plaintiff Lopez has standing to pursue claims under the FAL, as she reviewed and relied on Defendant's packaging, advertising, representations, and marketing materials regarding

the Products when selecting and purchasing the Products.

150.    In reliance on the statements made in Defendant's advertising and marketing materials and Defendant's omissions and concealment of material facts regarding the quality and use of the Products, Plaintiff Lopez and California Class Members purchased the Products.

151.    Had Defendant disclosed the true nature of the Products (that have a higher number of calories and fat content than advertised) Plaintiff Lopez and California Class Members would not have purchased the Products or would have paid substantially less for them.

152.    As a direct and proximate result of Defendant's actions, as set forth herein, Defendant received ill-gotten gains and/or profits, including but not limited to, money from Plaintiff Lopez and California Class Members who paid for the Products, which contained a much higher number of calories and fat content than represented.

153.    As a result of Defendant's above unlawful, unfair, and fraudulent acts and practices, Plaintiff Lopez, on behalf of herself and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendant from continuing these wrongful practices.

154.    Additionally, Plaintiff Lopez seeks restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff Lopez and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not

**COUNT VI**

**VIOLATION OF THE CALIFORNIA
CONSUMER LEGAL REMEDIES ACT ("CLRA")
Civil Code §§ 1750, *et seq.*
*(On Behalf of Plaintiff Lopez, individually, and on behalf of the California Subclass)*
*(for injunctive relief only)***

155.    Plaintiff Lopez, individually, and on behalf of the California Class, re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

156.    Plaintiff Lopez and the California Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

157.    Defendant, Plaintiff Lopez and the California Class are "persons" within the meaning of Cal. Civ. Code § 1761(c).

158.    The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

159.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

160.    Defendant engaged in unfair or deceptive acts or practices when, in the course of its business, it, among other acts and practices, intentionally and knowingly made material misrepresentation regarding the number of calories and fat contents of the Products, as detailed above.

161.    Specifically, by representing the Products contain a certain number of calories and fat content (represented in grams and as a %DV) which was incorrectly provided, Defendant engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

    1.    Representing that the Products have characteristics, uses, benefits and qualities

which they do not have.

2. Representing that the Products are of a particular standard, quality, and grade when they are not.

3. Advertising the Products and/or with the intent not to sell them as advertised.

4. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7), (9) and (16).

162.   Defendant's unfair or deceptive acts or practices, including its concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Lopez and California Class Members, about the true safety, quality and true value of the Products.

163.   Plaintiff Lopez and the California Class suffered injury in fact and actual damages resulting from Defendant's material misrepresentations.

164.   Defendant's violations present a continuing risk to Plaintiff Lopez and the California Class, as well as to the general public, and therefore affect the public interest.

165.   Defendant is on notice of the issues raised in this Count and this Complaint by way of, among other things, third-party consumer testing of their Products, as well as their own intrinsic knowledge of defect.

166.   Plaintiff Lopez also sent a notice letter to Defendant in accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendant of its alleged violations of Cal. Civ. Code § 1770(a) and demanding that Defendant correct or agree to correct the actions described therein within thirty (30) days of the notice letter.

167.    If Defendant fails to do so, Plaintiff Lopez will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiff and California Class Members are entitled under the CLRA.

168.    Attached hereto as **Exhibit A** is the venue affidavit required by CLRA, Cal. Civ. Code § 1780(d).

**COUNT VII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT**
**(815 ILCS 505/1 et seq.)**
***(On Behalf of Plaintiff Freifeld, Individually, and on Behalf of the Illinois Subclass)***

169.    Plaintiff Freifeld, individually, and on behalf of the Illinois Class, re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

170.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), §§ 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

171.    By the conduct described in detail above and incorporated herein, Defendant engaged in unfair or deceptive acts in violation of the Illinois Consumer Fraud Act.

172.    Defendant's representations regarding the Products and their calories and fat content, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Products.

173.    Defendant intended for class members to rely on Defendant's representations regarding the Products.

174.    Plaintiff Freifeld and the other Illinois class members justifiably acted or relied to their detriment upon the representations of fact concerning the Products, as evidenced by Plaintiff Freifeld and the other Class members' purchases of Products.

175.    Had Defendant disclosed all material information regarding the Products to

41

Plaintiff Freifeld and class members, Plaintiff Freifeld and class members would not have purchased or the Products or would have paid less to do so.

176.    Defendant's representations deceived Plaintiff Freifeld, and those same business practices have deceived or are likely to deceive members of the consuming public and members of the class.

177.    In addition to being deceptive, the business practices were unfair because Defendant knowingly sold Plaintiff Freifeld and class members Products containing a much higher number of calories and fat content. The injuries to Plaintiff Freifeld and class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff Freifeld and class members or to competition under all of the circumstances. Moreover, in light of Defendant's exclusive knowledge of the correct number of calories and fat content in the Products, the injury is not one that Plaintiff Freifeld or class members could have reasonably avoided.

178.    As a direct and proximate result of the unfair and deceptive trade practices, Plaintiff Freifeld and class members have suffered ascertainable loss and actual damages. Plaintiff Freifeld and class members who purchased the Products would not have purchased the Products, or, alternatively, would have paid less for them had the truth about the Products been disclosed.

179.    Plaintiff Freifeld and the Illinois Class seeks all available relief under this statutory cause of action

## COUNT VIII
### VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 505/2 et seq.)
### (*On Behalf of Plaintiff Freifeld, Individually, and on Behalf of the Illinois Subclass*)

180.    Plaintiff Freifeld, individually, and on behalf of the Illinois Class, re-alleges and

incorporates by reference all previous paragraphs as though fully set forth herein.

181.    Defendant is a "person" as defined by 815 ILCS §§ 510/1(5).

182.    Defendant engaged in deceptive trade practices in the conduct of its business, in violations of 815 ILCS §§ 510/2(a) by, without limitation, the following: (1) misrepresenting the number of calories in the Products, when tested using the appropriate Atwater factor calculating method the number of calories is actually much higher; and (2) the Products' labels misrepresent the total fat and total fat %DV, the Products when tested using the appropriate AOAC testing, contain a much higher amount of total fat content. Defendant knew consumers would purchase the Products and/or pay more for them under the erroneous belief that the Products contained the number of calories and fat content advertised on the label of the Products. The prominent advertising of the calories on the Products shows Defendant's understanding the information about caloric content is material to consumers. As a result of their deceptive acts and practices, Defendant has sold large quantities of the Products to consumers in Illinois. Absent Defendant's false, misleading, and/or deceptive conduct, Plaintiff Freifeld and the Class would not have purchased the Products or, at a minimum, would have paid less for them.

183.    Defendant's representations were material because they were likely to deceive reasonable consumers.

184.    Defendant's actions, as alleged herein, constitute unfair and deceptive acts and practices which were immoral, unethical, oppressive, and unscrupulous. The acts and practices alleged herein cause substantial injury to Plaintiff Freifeld and the Class that they could not reasonably avoid. The injuries to Plaintiff Freifeld and the Class outweighed any benefits to consumers or to competition Defendant continues to market and sell the Products with the false and misleading statements detailed herein.

185.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Freifeld and the Class have suffered, and will continue to suffer, injury, ascertainable losses of money and/or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

186.    Plaintiff Freifeld and the Class are entitled to such injunctive relief to ensure that Defendant ceases its unlawful acts and practices.

187.    Plaintiff Freifeld and the Class seek all relief allowed by law, including injunctive relief, damages, and reasonable attorneys' fees,

## COUNT V
## UNJUST ENRICHMENT
### *(On behalf of the Plaintiffs, individually, and on behalf of the Nationwide Class and, in the alternative, the New York, California and/or Illinois Subclass)*

188.    Plaintiffs, individually, and on behalf of the Nationwide Class, and in the alternative the New York, California and/or Illinois Class, re-allege and incorporate by reference all previous paragraphs as though fully set forth herein .

189.    At all times relevant hereto, Defendant deceptively marketed, advertised and sold merchandise to Plaintiffs and the Classes.

190.    Plaintiffs and the Classes conferred upon Defendant non-gratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs and the Classes were not receiving a product of the quality, nature, fitnesss or value that had been represented by Defendant and reasonable consumers would have expected.

191.    Defendant was unjustly enriched in retaining the revenues derived from purchases of merchandise by Plaintiffs and the Classes, which retention under these circumstances is unjust

and inequitable because Defendant falsely represented that the Products contained a specific number of calories and fat content per serving, while failing to disclose that the Products actually provided a much higher number of calories and fat content than represented, which caused injuries to Plaintiffs and the Classes because they paid a price premium due to the misleading advertising and markings on the Products.

192.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution and non-restitutionary disgorgement of profits to Plaintiffs and the Class Members for its unjust enrichment, as ordered by the Court. Plaintiffs, and those similarly situated, have no adequate remedy at law to obtain this restitution.

193.    Plaintiffs, therefore, seek an order requiring Defendant to make restitution and non-restitutionary disgorgement of profits to Plaintiffs and other members of the Class.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of other members of the proposed Classes, respectfully request that the Court enter judgment in Plaintiffs' favor and against Defendant as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.    Ordering payment of actual and punitive damages;

C.    Ordering payment of statutory damages pursuant to N.Y. Gen. Bus. Law §§ 349(h) and 350-d(1);

D.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the

other members of the Class;

E.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

F.     Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated: January 23, 2026

Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By:    /s/ Jason P. Sultzer
Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Russell M. Busch
**BRYSON HARRIS SUCIU
& DEMAY PLLC**
11 Park Place, 3rd Floor
New York, NY 10007
Tel: (919) 926-7948
rbusch@brysonpllc.com

Nick Suciu III*
**BRYSON HARRIS SUCIU
& DEMAY PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-3180
nsuciu@brysonpllc.com

*Counsel for Plaintiffs and the Class*

*Pro hac vice forthcoming*